IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MILTON RODRIGUEZ, #M51988,** ) | |
| ) | |
| **Plaintiff,** ) | |
| vs. ) | Case No. 23-cv-02685-SMY |
| ) | |
| **DANIEL MONTI,** ) | |
| **WEXFORD HEALTH SOURCES, INC.,** ) | |
| **and ST. LOUIS UNIVERSITY HOSPITAL,** ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Milton Rodriguez, an inmate in the custody of the Illinois Department of Corrections (IDOC) and currently incarcerated at Centralia Correctional Center (Centralia), filed this action pursuant to 42 U.S.C. § 1983 for constitutional deprivations stemming from alleged inadequate medical treatment for strokes he suffered at Centralia. The Complaint is now subject to preliminary review under 28 U.S.C. § 1915A, which requires this Court to dismiss any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant. *Id*.

## The Complaint

Plaintiff makes the following allegations in the Complaint (Docs. 1 and 1-1): Sometime in August or September 2022, Plaintiff repeatedly "fell out" while in East 5 Housing Unit. (Doc. 1, p. 6). He was taken to the prison's health care unit (HCU), where his blood pressure was "through the roof." *Id*. Plaintiff was nevertheless sent back to his cell without treatment while still exhibiting stroke-like symptoms. *Id*.

Later the same day, Plaintiff "fell out" again in the prison's chow hall. Lieutenant Grote

1

refused to call a "code 3" or allow anyone else to do so. (Doc. 1-1, p. 1). The lieutenant instead threatened him with disciplinary action for a "dangerous disturbance," an offense punishable with segregation, a disciplinary transfer, demotion to C-grade status, and restrictions on outside contacts. Plaintiff began to cry when he realized that he would be punished instead of provided with medical treatment. *Id*.

Once all other inmates left the chow hall, Lieutenant Grote agreed to send Plaintiff for medical attention. The lieutenant also told Plaintiff that he would make sure he was punished for "faking it." *Id*. When a nurse and inmate porter (Inmate Reed) came to Plaintiff's aid with a wheelchair, Lieutenant Grote told them that Plaintiff was faking it. Upon hearing this, they instructed Plaintiff to get into the wheelchair on his own. Plaintiff insisted that his legs "weren't working," he was still dizzy, and he felt like throwing up. *Id*. The lieutenant warned Plaintiff that "nothing would save [him]" if he threw up. *Id*. The nurse asked Lieutenant Grote and Inmate Reed to assist Plaintiff into the wheelchair. *Id*.

Inmate Reed pushed Plaintiff to the HCU, while Lieutenant Grote told everyone along the way that Plaintiff was faking it. *Id*. at 2. The nurse was initially upset by Plaintiff's inability to stand up and get onto the scale, but her attitude noticeably changed when she took Plaintiff's blood pressure. She instructed him to rest until he felt better. An hour or so later, Nurse Barb took Plaintiff's blood pressure again and appeared concerned when he reported ongoing symptoms of dizziness and headaches. He was taken to a local hospital for treatment in Centralia, Illinois. *Id*.

The first hospital transferred Plaintiff to a second hospital in Mt. Vernon, Illinois, and the second hospital transferred him to St. Louis University Hospital. (Doc. 1, p. 7). Once there, a hospital physician ordered a CT scan for diagnostic purposes, but a nurse later informed Plaintiff that the prison's medical director would not approve it. The following morning, Plaintiff's blood

pressure was lower. Plaintiff learned that he would be discharged without a diagnosis or treatment. Plaintiff begged the hospital physician to reconsider the discharge decision and learned that a prison physician requested his discharge on condition that Plaintiff remain under medical supervision for three days at the prison. *Id*.

Following his return to prison, and after demanding a second opinion, Plaintiff was ultimately diagnosed with several strokes. (Doc. 1, p. 7). Even so, Dr. Meyers released Plaintiff to the general population before Plaintiff could walk or complete daily tasks. (Doc. 1-1, p. 3). Dr. Meyers would not consider housing Plaintiff near the HCU or assigning him an ADA attendant. Instead, Plaintiff was transferred to the cell located farthest from the HCU and could not walk to the HCU. He received ten-plus disciplinary tickets for missing the pill line and insulin line. At least three doctor appointments were cancelled, and he was denied physical therapy. Plaintiff has not regained full function. *Id*. He seeks monetary and injunctive relief.[1] *Id*. at 3-4.

### Preliminary Dismissals

Federal Rule of Civil Procedure 10(a) requires a plaintiff to name all parties in the case caption. *See also Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005). Plaintiff mentions several individuals in the statement of his claim who are not identified as defendants, including: Lieutenant Grote, Dr. Meyers, Nurse Barb, Centralia's Medical Director, Centralia's physician, and others. Because these individuals are not named as defendants, they are not considered parties to this action, and all claims against them are considered **DISMISSED without prejudice**.

### Discussion

Based on the allegations in the Complaint, the Court designates the following claims:

---

[1] Plaintiff requests: (1) a prohibition against staff retaliation; (2) assignment of an ADA attendant; (3) housing near the HCU; (4) policy changes regarding Code 3 calls; (5) official review of Lieutenant Grote's actions; (6) an apology from Lieutenant Grote; (7) full evaluation by an outside specialist; (8) an institutional transfer; and (9) numerous changes to Wexford's policies and procedures for medical care. He seeks no interim relief under FED. R. CIV. P. 65.

> Count 1: Eighth Amendment claim against Defendants for their deliberate indifference to Plaintiff's strokes at Centralia in August/September 2022.

**Any other claim that is mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.**[2]

The Eighth Amendment governs Plaintiff's claims for denial of adequate medical care. To articulate a colorable claim, a plaintiff must describe an objectively serious medical need, such as one that has been diagnosed by a physician as requiring treatment or one where the need for treatment would be obvious to a lay person. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The plaintiff must also describe deliberate indifference to the serious medical need by each defendant. *Id*. Deliberate indifference occurs when a defendant "know[s] of and disregard[s] an excessive risk to inmate health." *Id*.

Even assuming that Plaintiff had a sufficiently serious medical need, he names no defendants in his case caption *and* statement of claim who were allegedly deliberately indifferent to his medical needs. Section 1983 liability hinges on personal involvement in a constitutional deprivation. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014); *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 619 (7th Cir. 2022). The doctrine of *respondeat superior* is inapplicable in this context. *Id*. Because Warden Monti is neither mentioned in Plaintiff's statement of the claim nor implicated in any treatment decisions, Count 1 cannot proceed against him.

Plaintiff mentions Wexford only in connection with his request for injunctive relief. But to proceed with a claim against this defendant, Plaintiff must allege that a policy, custom, or practice attributable to the private medical corporation actually caused a violation of his constitutional rights, which he does not do. *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782,786

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

(7th Cir. 2014) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978)).  Therefore, Count 1 will be dismissed without prejudice against Wexford.

Plaintiff alleges that St. Louis University Hospital's treatment of him is tied to the state's responsibility for his overall medical care.  However, his allegations do not suggest the alleged mistreatment was due to a policy of the hospital or a failure to train its staff.  Because *respondeat superior* is inapplicable under § 1983, no claim for inadequate medical care by a hospital physician or other staff member can proceed against the hospital.  Count 1 will also be dismissed against this defendant.

## Disposition

The Complaint (Doc. 1) is **DISMISSED without prejudice** for failure to state a claim. **ALL DEFENDANTS** are **DISMISSED without prejudice**.  Plaintiff may file a First Amended Complaint on or before **February 26, 2024**, if he wishes to proceed with his claim(s) in this case. Should he decide to do so, it is strongly recommended that Plaintiff use the civil rights complaint form designed for use in this District.  He should label the form "First Amended Complaint" and list this case number on the first page (No. 23-cv-2685-SMY).  Plaintiff should identify each defendant in the case caption and also include sufficient allegations against each to describe what the defendant did to violate his rights, *see DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (a successful complaint generally alleges "the who, what, when, where, and how. . . ."), and as much as possible, include the relevant facts in chronological order, inserting each defendant's name where necessary to identify the actors and each defendant's actions.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004).  Therefore, the Court will not accept piecemeal amendments to a previously filed

Complaint.  The First Amended Complaint must stand on its own, without reference to any previous pleading, and it will be subject to review under 28 U.S.C. § 1915A.

Plaintiff is **WARNED** that if he fails to file a First Amended Complaint consistent with the deadline and instructions herein, the case will be dismissed with prejudice for failure to state a claim for relief, failure to comply with a court order, and for failure to prosecute his claims.  The dismissal may count as a "strike" under 28 U.S.C. § 1915(g).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court informed of any address change; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:   December 12, 2023            *s/ Staci M. Yandle*
                                     **STACI M. YANDLE**
                                     **United States District Judge**