IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MILTON RODRIGUEZ, #M51988,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 23-cv-02685-SMY |
| | ) |
| **DANIEL MONTI,** | ) |
| **WEXFORD HEALTH SOURCES, INC.,** | ) |
| **JONATHAN GROTE,** | ) |
| **NURSE BARB,** | ) |
| **DR. PERCY MYERS,** | ) |
| **JOHN DOES,** | ) |
| **and JANE DOES,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is now before the Court for review of the First Amended Complaint filed by Plaintiff Milton Rodriguez pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations stemming from inadequate medical treatment for a stroke at Centralia Correctional Center. (Doc. 32). He seeks monetary and injunctive relief. *Id*. The First Amended Complaint is subject to screening under 28 U.S.C. § 1915A, which requires this Court to dismiss any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant.

### First Amended Complaint

Plaintiff makes the following allegations in the Amended Complaint (Doc. 32): Sometime in August or September 2022, Plaintiff suffered stroke symptoms and "fell out" while in East 5 Housing Unit. *Id*. at ¶ 2. He was taken to the prison's health care unit (HCU), where his blood pressure was "through the roof." *Id*. While still exhibiting stroke-like symptoms, Plaintiff was

1

sent back to his cell without treatment. *Id*.

Later the same day, Plaintiff "fell out" again in the prison's chow hall. Lieutenant Grote refused to call a "code 3" or allow anyone else to do so. *Id*. at ¶ 3. The lieutenant instead threatened him with disciplinary action for a "dangerous disturbance," an offense punishable with segregation, a disciplinary transfer, demotion to C-grade status, and restrictions on outside contacts. Realizing that he would be punished instead of given medical treatment, Plaintiff began to cry. *Id*.

Lieutenant Grote waited to summon help until all other inmates left the chow hall. When Nurse Barb and Inmate Porter Reed finally arrived with a wheelchair, Lieutenant Grote told them that Plaintiff was "faking it." *Id*. They instructed Plaintiff to get into the wheelchair on his own, but Plaintiff explained that his legs were not working, he was dizzy, and he felt nauseous. The lieutenant warned Plaintiff that "nothing would save [him]" if he threw up. *Id*. Lieutenant Grote and Inmate Reed assisted Plaintiff into the wheelchair, while the lieutenant continued to say he was faking it.

Nurse Barb was initially upset by Plaintiff's inability to stand up and get onto the scale, but her attitude noticeably changed when she took Plaintiff's blood pressure. *Id*. at ¶ 4. She did not disclose the results, but Nurse Barb instructed Inmate Reed to escort Plaintiff to the infirmary to rest until he felt better. He continued experiencing stroke symptoms. When Nurse Barb took his blood pressure an hour later, she appeared concerned.

Plaintiff was transported to the emergency room at St. Mary's Hospital in Centralia, Illinois. *Id*. at ¶ 5. He was evaluated and transferred to Good Samaritan Hospital in Mt. Vernon, Illinois, and then sent to St. Louis University Hospital. Before he received a diagnosis or treatment,

Plaintiff was released from the hospital the next day. He learned that the prison's physician[1] would not approve a diagnostic CT scan and instead requested Plaintiff's discharge to the prison infirmary for additional observation. *Id*.

Following his return to prison, Plaintiff demanded a second opinion and was ultimately diagnosed with a stroke. *Id*. at ¶ 6. Dr. Myers released Plaintiff to the general population before he could walk or complete daily tasks. *Id*. Dr. Myers would not consider housing Plaintiff near the HCU or assigning him an ADA attendant. Plaintiff was transferred to a cell located farthest from the HCU in South 3. When he could not walk to the pill line or insulin line, Plaintiff was issued more than ten disciplinary tickets, his medical appointments were cancelled three or more times, and he was refused physical therapy. As a result, he lost basic motor skills, including writing skills, and has not regained full bodily function.

Plaintiff has since learned that Dr. Aliya Najib at Good Samaritan Hospital diagnosed him with acute dissection of the left vertebral artery, which totally occluded and caused a cerebellar stroke. *Id*. at ¶ 7. The stroke was a "time sensitive event." *Id*. Given the timing of his symptoms and the defendants' delay in treatment, Plaintiff is no longer amenable to any vascular procedure. He filed grievances to address the denial of medical care at Centralia, to no avail.

Warden Monti, Dr. Myers, Nurse Barb, and Lieutenant Grote all delayed or denied Plaintiff treatment for stroke symptoms and necessary accommodations for his physical disabilities, even though they were aware of his history of stroke symptoms and complaints before August 2022. *Id*. at ¶¶ 8-9. Wexford Health Sources, Inc., the private medical corporation in charge of staffing the prison with medical providers, maintained policies, customs, and/or practices that resulted in understaffing and restrictive rules that led to the delay or denial of adequate medical examinations,

---

[1] It is unclear whether Plaintiff's reference to the prison physician is a reference to Dr. Myers or someone else because Plaintiff name no other physician as a defendant and provided no other identifying information.

diagnostic testing, and treatment. *Id*. at ¶ 13. Wexford also employed unknown medical staff (identified generically as John and Jane Does), who failed to timely or properly treat Plaintiff. *Id*. at ¶ 16.

## Discussion

Based on the allegations, the Court designates the following claims in the First Amended Complaint:

Count 1: Eighth Amendment claim against Warden Monti, Dr. Myers, Nurse Barb, Lieutenant Grote, and John and Jane Doe (medical staff) for exhibiting deliberate indifference to Plaintiff's stroke at Centralia beginning in August or September 2022.

Count 2: Eighth Amendment claim against Wexford for its policy, custom, or practice of understaffing and imposition of restrictive rules that resulted in delays in evaluating, testing, and treating inmates for strokes.

Count 3: Americans with Disabilities Act (ADA) and/or Rehabilitation Act (Rehab Act) claim against Defendants for failing to accommodate Plaintiff's physical disabilities resulting from the stroke he suffered in August or September 2022, by denying him housing and access to medical care in the HCU, physical therapy, pill line, and insulin line.

**Any other claim mentioned in the First Amended Complaint, but not addressed herein, is considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).**

## Count 1

An Eighth Amendment claim arising from the denial of medical care requires a plaintiff to allege an objectively serious medical need and deliberate indifference by each defendant. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). An objectively serious medical need is one that has been diagnosed by a physician as requiring treatment or one where the need for treatment would be obvious to a lay person. *Id*. Deliberate indifference occurs when a defendant "know[s] of and disregard[s] an excessive risk to inmate health." *Id*. Plaintiff's allegations satisfy both

requirements as to Dr. Myers, Nurse Barb, and Lieutenant Grote. Accordingly, Count 1 will receive further review against them.

However, the allegations do not state a colorable claim against Warden Monti and John and Jane Doe (medical providers). Section 1983 liability hinges on personal involvement in a constitutional deprivation. *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 619 (7th Cir. 2022). The doctrine of *respondeat superior* is inapplicable. Therefore, this claim cannot proceed against a high-ranking official, like Warden Monti, simply because subordinates violated the plaintiff's constitutional rights. Instead, Plaintiff must describe deliberate indifference on the part of the warden, himself. Similarly, Plaintiff cannot pursue claims against large groups of unidentified individuals, like John and Jane Doe (medical providers), without identifying each individual as a defendant and describing what each one did, or failed to do, in violation of his rights. Count 1 will therefore be dismissed without prejudice against them.

## Count 2

To proceed with a claim against Wexford, Plaintiff must allege that a policy, custom, or practice attributable to the private medical corporation actually caused a violation of his constitutional rights. *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782, 786 (7th Cir. 2014) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978)). Plaintiff names Wexford in connection with a claim that its understaffing and restrictive rules caused delays in his treatment. However, the allegations do not suggest that his treatment was denied or delayed due to understaffing, and Plaintiff points to no particular rule or set of rules of the corporation that caused the violation of his rights. Count 2 will therefore be dismissed without prejudice for failure to state a claim against Wexford.

**Count 3**

To state a colorable claim under the ADA, 42 U.S.C. § 12101 *et seq.*, or Rehab Act, 29 U.S.C. §§ 794–94e, a plaintiff must allege that (1) he is a qualified person with a disability; (2) he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by the entity; and (3) the denial or discrimination was because of his disability. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Here, Plaintiff alleges that his stroke-related mobility issues qualified him as a person with a disability and necessitated housing that allowed him access to the HCU, physical therapy, pill line, and insulin line. Without these accommodations, Plaintiff claims he was unable to access necessary medical care, medication, and physical therapy at the prison. These allegations are sufficient to state a claim under the ADA and/or Rehab Act that is appropriately brought against the state agency (*i.e.*, Illinois Department of Corrections) or a state official acting in his or her official capacity (*i.e.*, Warden Daniel Monti, in an official capacity). *Id.* at 670 (citing 29 U.S.C. § 794(b); 42 U.S.C. § 12131). Count 3 will receive further review against Warden Monti, in an official capacity only.

**<u>Disposition</u>**

The First Amended Complaint (Doc. 32) survives screening under 28 U.S.C. § 1915A as follows:

- **COUNT 1** will proceed against **DR. PERCY MYERS, NURSE BARB,** and **LIEUTENANT JONATHAN GROTE**, in their individual capacities. This claim is **DISMISSED** without prejudice against **WARDEN DANIEL MONTI** and **JOHN AND JANE DOE (medical staff).**

- **COUNT 2** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted against **WEXFORD HEALTH SOURCES, INC.**

- **COUNT 3** will proceed against **WARDEN DANIEL MONTI**, in an official capacity. This claim is **DISMISSED** with prejudice against all other defendants.

- The **CURRENT WARDEN OF CENTRALIA CORRECTIONAL CENTER** is

hereby **ADDED** as a defendant, in an official capacity only, for purposes of implementing any injunctive relief ordered in this case.

The Clerk shall prepare for **DR. PERCY MYERS, NURSE BARB, LIETENANT JONATHAN GROTE, WARDEN DANIEL MONTI** (official capacity only), and the **CURRENT WARDEN OF CENTRALIA CORRECTIONAL CENTER** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 32), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant.  The Court will require that Defendant to pay the full costs of formal service, as authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file appropriate responsive pleading to the First Amended Complaint (Doc. 32) and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though he was granted *in forma pauperis* status. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of

Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**The Clerk's Office is DIRECTED to ENTER the Court's standard HIPAA-Qualified Protective Order; ADD the CURRENT WARDEN OF CENTRALIA CORRECTIONAL CENTER as a defendant, in an official capacity only, for purposes of implementing any injunctive relief herein; and TERMINATE Defendants WEXFORD HEALTH SOURCES, INC., JOHN DOES, and JANES DOES as parties in CM/ECF.**

**IT IS SO ORDERED**.

**DATED: 1/9/2025**

s/ *Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

## Notice to Plaintiff

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your First Amended Complaint. After service has been achieved, Defendants will enter their appearances and file Answers to your First Amended Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have all filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' attorneys have filed appearances will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.