IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MILTON RODRIGUEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-cv-02685-SMY |
| | ) |
| DANIEL MONTI, | ) |
| JONATHAN GROTE, | ) |
| BARBARA WHEELER, | ) |
| DR. PERCY MYERS, and | ) |
| JEFFREY WEHKING, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, Chief District Judge:**

This matter is now before the Court for a decision on three motions for summary judgment for failure to exhaust administrative remedies filed by Defendants Percy Myers, M.D. (Doc. 56), Barbara Wheeler (Doc. 59), Jonathan Grote, Daniel Monti, and Jeffrey Wehking[1] (Doc. 61). For the following reasons, the motions will be denied.

## BACKGROUND

Plaintiff Milton Rodriguez filed this action pursuant to 42 U.S.C. § 1983 for violations of his federally protected rights at Centralia Correctional Center. Plaintiff claims he was denied medical treatment and ADA accommodations for a stroke. He seeks monetary and injunctive relief. (Docs. 1, 32).

In the First Amended Complaint, Plaintiff alleges he suffered symptoms of a stroke at Centralia in August or September 2022. (Doc. 32). When he was taken to the health care unit

---

[1] Jeffrey Wehking is the Warden of Centralia Correctional Center and is named as a defendant in an official capacity only for purposes of implementing any injunctive relief ordered. Plaintiff brings no claims against him.

1

(HCU), his blood pressure reading was "through the roof." *Id*. He was sent back to his cell without treatment. Later the same day, Plaintiff "fell out" again in the dining hall. *Id*. Lieutenant Grote waited to summon help and threatened him with disciplinary action instead. When help arrived, Lieutenant Grote told Nurse Barb that Plaintiff was "faking it." *Id*. Nurse Barb was initially upset by Plaintiff's inability to mobilize, but her attitude changed when she took his blood pressure. She instructed an inmate porter to escort him to the infirmary. When his symptoms persisted, Plaintiff was transported to the emergency room at St. Mary's Hospital in Centralia, Illinois, transferred to Good Samaritan Hospital in Mt. Vernon, Illinois, and then sent to St. Louis University Hospital in St. Louis, Missouri. He was released the next day without a diagnosis or treatment after Centralia's physician[2] requested his discharge to the prison's infirmary. *Id*.

Back at Centralia, Dr. Myers returned Plaintiff to the general population before he could complete daily tasks or walk. The doctor would not consider housing him near the HCU or assigning him an ADA attendant. When he could not walk from his cell to the pill line or insulin line, he was issued disciplinary tickets, his medical appointments were cancelled, and he was denied physical therapy. He was diagnosed with a stroke after demanding a second opinion. Plaintiff filed grievances about the denial of medical care and accommodations, to no avail. *Id*.

Two claims survived screening of the First Amended Complaint under 28 U.S.C. 1915A:

**Count 1:** Eighth Amendment claim against Dr. Percy Myers, Nurse Barbara Wheeler (Nurse Barb), and Lieutenant Jonathan Grote for their deliberate indifference to Plaintiff's stroke at Centralia in August or September 2022.

**Count 3:** Americans with Disabilities Act (ADA) and/or Rehabilitation Act (Rehab Act) claim against Warden Daniel Monti, in an official capacity, for failing to accommodate Plaintiff's physical disabilities resulting from his stroke in August or September 2022, by denying him access to housing near the HCU, medical care, physical therapy, pill line, and insulin line.

---

[2] Plaintiff does not clarify whether this reference to the prison physician is a reference to Dr. Myers or someone else.

(Docs. 32, 34). All other claims and defendants were dismissed at screening, including Count 2 against Wexford Health Service, Inc. *Id*.

In their Answers to the First Amended Complaint, Defendants raised an affirmative defense based on Plaintiff's alleged failure to exhaust his available administrative remedies. (Docs. 49, 53, 54). All defendants then moved for summary judgment on the issue of exhaustion. (Docs. 56, 59, 61).

## MOTIONS FOR SUMMARY JUDGMENT

Defendants Myers, Wheeler, and Grote seek summary judgment on Count 1, *see* Docs. 56, 59, and 61, and Defendant Monti seeks summary judgment on Count 3, *see* Doc. 61. Defendants assert that Plaintiff failed to exhaust his administrative remedies in compliance with the Prison Litigation Reform Act when he filed his grievances late. *Id*. Defendant Wheeler also argues that Plaintiff failed to properly identify her in his grievances. (Doc. 59).

Plaintiff opposes summary judgment and argues administrative remedies were unavailable to him due to serious physical limitations caused by his stroke, his housing in the HCU for three months after his stroke, and late or lack of responses to grievances (Doc. 65). He asks the Court to excuse him from the exhaustion requirement for good cause shown for his late grievances and/or grievances sent directly to the Administrative Review Board. *Id*. Additionally, Plaintiff asks the Court to find that his grievances adequately describe his complaints against the defendants, including Nurse Barbara Wheeler. *Id*.

## FINDINGS OF FACT

The following material facts are taken from pleadings, affidavits, depositions, admissions, and answers to interrogatories and are considered undisputed for purposes of the pending motions:

Plaintiff was an inmate in the Illinois Department of Corrections (IDOC) at all relevant times. (Doc. 61, ¶ 7). IDOC has an administrative grievance process for inmates to grieve prison conditions, and the procedure is outlined in 20 ILL. ADMIN. CODE 504.800, *et seq*. (*Id*.). Inmate grievances are tracked in grievance logs maintained at each IDOC facility. (*Id*. at ¶ 8, Ex. A-B). The Administrative Review Board (ARB) keeps a separate log of grievances and appeals filed by inmates (IGRV). (*Id*. at ¶ 13, Ex. D-E). There is no record of Plaintiff's first grievance. IDOC records show that he submitted six grievances between the date of his stroke (August or September 2022) and the date he filed his Complaint (August 3, 2023). (*Id*. at ¶ 9, Ex. A; Docs. 57, 60, 65). Three grievances address the claims in this case: Grievance #E-23-2-81, Grievance #22-12-90, and Grievance #E-23-4-15. (*Id*.).

### Grievance 1: September 2022

Plaintiff attests that he attempted to file a grievance unsuccessfully in September 2022. (Doc. 65-1, ¶ 3). When he returned from the hospital in September 2022, Plaintiff was housed in Centralia's HCU for three months after his stroke. (*Id*. at ¶¶ 1, 5). During this time, he was unable to lift his head, talk, or walk, and frequently vomited. (*Id*. at ¶ 2). He required the assistance of others to sit up in bed and eat. (*Id*.). He lost seventy pounds. (*Id*.). He was also unable to communicate effectively. (*Id*. at ¶ 4). His stroke primarily affected the left side of his body. (*Id*. at ¶ 3). Because Plaintiff is left-handed, the stroke rendered him unable to write. (*Id*.). Plaintiff attempted to use his non-dominant, right hand to prepare a grievance about the claims in this case in late September 2022, but it was illegible. (*Id*.). He had no access to a typewriter or alternative means to prepare the grievance. (*Id*.). When he eventually found an inmate to assist him in writing a grievance, there was no grievance box available to deposit it in the HCU, and the grievance was never delivered. (*Id*.). Plaintiff states that he was physically and mentally unable to prepare and

4

submit a grievance within the 60-day timeframe required. (*Id*.). By the time he moved from the HCU and found someone to help him type and write the grievances at issue, they were late. (*Id*.).

**Grievance 2: #E-23-2-81**

Grievance #E-23-2-81 is a typewritten grievance dated February 22, 2023 that Plaintiff marked as an emergency. (Doc. 57, ¶ 2a, Ex. A at 0018; Doc. 60, ¶¶ 6-10, Ex. A at 000026-000030; Doc. 61, ¶¶ 10, 15b., Ex. E at 000025-000030; Doc. 65, ¶ 8). Among other things, Plaintiff states that around the end of August 2022, he suffered frequent dizzy spells and occasional cold sweats. While he was in the prison's dining room, Plaintiff requested medical attention after he began to feel dizzy and struggled to walk. A nurse and inmate porter (Porter Reed) reported to the dining hall to provide medical treatment. Plaintiff was taken to the HCU where the nurse asked him to stand on a scale to record his weight and then took his blood pressure. After an hour or so, Nurse Barb came in to ask if Plaintiff was feeling better and took his blood pressure again. Plaintiff was later sent to the hospital and diagnosed with multiple strokes. In his grievance, Plaintiff requested assistance from an ADA attendant, housing near the HCU, medical care, physical therapy, and a change in IDOC and Wexford's practice of delaying diagnosis and referrals for medical attention.

Plaintiff acknowledged that his grievance was late, but explained the stroke prevented him from using his left hand to write and he was unable to write a legible grievance with his right hand. He was also unable to find someone to help him in September 2022. Plaintiff "humbly and respectfully request[ed] the 60-day timeframe restriction be waived." (*Id*.).

On May 4, 2023, Centralia's grievance counselor returned Grievance #E-23-2-81 to Plaintiff for failure to submit it on the official grievance form. He was instructed to prepare a new grievance on the correct form and place it in the prison's grievance box. Rather than resubmit the

grievance on the correct form at the institutional level, Plaintiff sent the original grievance directly to the ARB on May 8, 2023. The ARB returned it to Plaintiff two days later with instructions to resubmit the grievance with the first-level facility response and second-level facility response. Because Plaintiff did not resubmit his grievance to the ARB with the responses required, he received no ARB response before filing suit. (*Id*.).

### Grievance 3: #22-12-90

Grievance #22-12-90 addresses Plaintiff's request for ADA accommodations. (Doc. 61, ¶ 12a., Ex. A; Doc. 61-1, Ex. A, ¶ 6; Doc. 65, ¶ 6). He submitted it for first-level review on December 19, 2022. This grievance was not sent for second-level review. (*Id*.).

### Grievance 4: #E-23-4-15

Grievance #E-23-4-15 concerns ADA accommodations. (Doc. 61, ¶¶ 12b, 15a., Ex. E at 000017-000021). This handwritten grievance is dated April 5, 2023. Plaintiff complains about Dr. Myers's denial of an ADA assistant and revocation of a walker permit. This grievance is logged in the facility's grievance log and ARB tracking system (IGRV). The ARB denied it, finding that the issue was appropriately addressed by the facility administration. (*Id*.).

### DISCUSSION

Summary judgment is proper if the pleadings, affidavits, depositions, admissions, and answers to interrogatories show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). If a defendant meets his or her burden of showing that there is an absence of evidence to support the plaintiff's claim, Plaintiff must demonstrate by affidavit, depositions, admissions, and answers to interrogatories that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

6

Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party, *i.e.*, the prisoner. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).

The district court's role on summary judgment is generally not to weigh evidence or judge witness credibility. When presented with a motion for summary judgment on the issue of exhaustion, however, the district court's approach to factual disputes is different. In *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), the Seventh Circuit instructed district courts to conduct an evidentiary hearing to resolve contested issues of fact concerning exhaustion. However, the Supreme Court partially overruled *Pavey* in *Perttu v. Richards*, 605 U.S. 460, 464 (June 18, 2025), holding exhaustion disputes must be reserved for a jury if contested facts on exhaustion are intertwined with factual disputes on the merits of a claim. When the district court is presented with a motion for summary judgment on exhaustion with material facts in dispute, it must consider whether intertwinement between exhaustion and the merits requires a jury trial.[3]

If no material facts are disputed, no hearing is required. *See Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024) (citing *Smallwood v. Williams*, 59 F.4th 306, 318 (7th Cir. 2023)); *Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009) (no hearing required where there are "no disputed facts regarding exhaustion, only legal questions"). Here, because there are no genuine issues of material fact in dispute, no *Pavey* hearing is necessary to resolve the pending motions.

Under the Prison Litigation Reform Act (PLRA), a prisoner may not bring a lawsuit concerning prison conditions unless and until he has exhausted all available administrative

---

[3] The Supreme Court decided *Perttu* while the parties were still briefing the issue of exhaustion, so the Court requested supplemental briefing to address the impact of *Perttu* on the pending motions. (Doc. 69). After reviewing Defendants' Supplemental Briefs (Docs. 70-72) and Plaintiff's Response (Doc. 74), the Court finds that *Perttu* is distinguishable. Unlike *Perttu*, the material facts surrounding exhaustion are undisputed. There is also no intertwinement between the facts underlying exhaustion and the merits of the claims. This case involves an Eighth Amendment medical deliberate indifference claim and ADA/Rehab Act claim arising from the denial of medical care and accommodations for Plaintiff's stroke. It does not involve a retaliation claim, like *Perttu*. The questions on exhaustion can be resolved without addressing the questions on the merits. Thus, *Perttu* poses no barrier to this Court's decision on the pending motions.

remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d 739, 740 (7th Cir. 2008). To properly exhaust his administrative remedies, a prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

The Illinois Administrative Code sets forth the grievance process that applies to an inmate in the custody of the Illinois Department of Corrections. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017). The regulations require the inmate to file his grievance with his counselor or Grievance Officer[4] within 60 days of the incident, occurrence, or problem giving rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through the counselor, the grievance must be submitted to a Grievance Officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO) (Warden) within 2 months of receiving the grievance, whenever feasible. 20 ILL. ADMIN. CODE § 504.830(e). The Warden then provides the inmate with a written decision on the grievance. *Id.*

If the inmate is not satisfied with the Warden's response, he files an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the Warden's decision. *Id.* The inmate must attach copies of the Grievance Officer's report and Warden's decision to his appeal. *Id*. The ARB then considers the matter and submits a written report of its findings and recommendations to the Director, who makes a final determination within 6 months of receipt of the matter, when reasonably feasible. 20 ILL. ADMIN. CODE § 504.850(d), (e).

---

[4] Grievances addressing certain issues unrelated to this case are submitted directly to the Grievance Officer, and all other grievances should be sent to the counselor first. *Id*.

8

If he faces an emergency, an inmate can use an alternative procedure to file an emergency grievance. 20 ILL. ADMIN. CODE § 504.840. He may check the emergency grievance box on the form and submit it directly to the Warden. *Id*. If deemed an emergency due to a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is expedited for processing. *Id*. If the grievance does not describe an emergency, the Warden denies it as a non-emergency, and the offender is notified, in writing, that he may resubmit the grievance in accordance with the standard grievance procedure. 20 ILL. ADMIN. CODE § 504.840(c).

The PLRA requires a prisoner to exhaust all available administrative remedies before bringing a lawsuit concerning prison conditions. *See* 42 U.S.C. § 1997e(a). The exhaustion requirement is an affirmative defense. As such, the defendants bear the burden of proving that "an administrative remedy was available and that [Plaintiff] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).

The parties do not dispute that Plaintiff failed to properly use the grievance procedure outlined in 20 ILL. ADMIN. CODE § 504.800, *et seq*. Plaintiff was unable to file his first grievance in September 2022, and Defendants have no record of it. His second grievance (E-23-2-81) was filed late and out of order on February 22, 2023. His third grievance (22-12-90) addressing ADA accommodations was submitted for review at the first level but not the second on December 19, 2022. Plaintiff's fourth grievance (E-23-4-15) addressing ADA accommodations was submitted in April 2023 at the institution and ARB, where it was denied as properly resolved by the institution. None were submitted "in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.

The question on summary judgment is whether Plaintiff's physical limitations rendered the grievance process unavailable to him and thus relieved him of the obligation to exhaust his

9

remedies under the PLRA. "The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (citation omitted). Thus, an inmate is required to exhaust "those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. The PLRA "does not demand the impossible," so "[r]emedies that are genuinely unavailable or nonexistent need not be exhausted." *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016).

In *Ross,* the Supreme Court described three circumstances when administrative remedies are unavailable and exhaustion is not required. *Ross*, 578 U.S. at 643-44. First, a grievance process is rendered unavailable if the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use." *Id*. This occurs when a mechanism exists but no ordinary prisoner can navigate it. *Id*. Second, an administrative remedies process is rendered unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 644. Third, it becomes unavailable when the administrative procedures serves as a "simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 643. Although the *Ross* list is not exhaustive, the unavailability exception is meant to be narrowly construed. *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022).

If the evidence demonstrates remedies were available at the time the inmate was injured, summary judgment may be appropriate. *Wallace v. Baldwin*, 55 F.4 535, 543-44 (7th Cir. 2022). If the evidence shows that remedies were not available, under *Ross*, exhaustion is not required and summary judgment should be denied. *Id*. at 544. Where a plaintiff can point to "some evidence" that administrative remedies were not available under the PLRA as described in *Ross*, the district

10

court must decide whether remedies were available before granting summary judgment on exhaustion grounds. *Id*. at 545.

The inquiry into availability is fact specific. *Smallwood*, 59 F.4th at 318. The court must consider individual capabilities when determining whether the grievance process could have been understood by a particular prisoner. *Id*. (citing *Ramirez v. Young*, 906 F.3d 530, 535 (7th Cir. 2018)). In numerous instances, the Seventh Circuit has found that a remedy is not available when an inmate is physically or mentally unable to pursue it. For example, the Seventh Circuit found that an inmate who was incapacitated by a stroke lacked any available remedy. *Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011). Likewise, an inmate incapacitated by severe physical limitations that prevented him from writing a grievance lacked an available administrative remedy. *Lanaghan v. Koch*, 902 F.3d 683 (7th Cir. 2018). And, an inmate with a mental incapacity that prevented him from preparing a grievance similarly lacked access to an available remedy. *Weiss v. Barribeau*, 853 F.3d 873, 874-75 (7th Cir. 2017). A finding of unavailability in this context does not require a finding of culpability on the part of any defendant or fault on the part of a plaintiff. *Lanaghan*, 902 F.3d at 687-88 (proper focus was not on whether the defendants engaged in affirmative misconduct but whether the inmate was unable to file a grievance within the time period required through no fault of his own).

Here, the undisputed facts lead to the conclusion the grievance process was unavailable. Plaintiff suffered from a stroke that caused serious and long-lasting physical and mental limitations, which he described in detail in a sworn declaration (*see* Doc. 65-1). Plaintiff attests the stroke left him unable to lift his head, talk, walk, sit up, or eat without assistance for months. He frequently vomited, and he lost seventy pounds. Plaintiff was also unable to communicate effectively. His left side was compromised, leaving him unable to write with his dominant hand

and he could not write legibly with his right hand.  He required assistance preparing the grievances at issue.

Plaintiff's housing situation also hindered him from pursuing administrative remedies.  He was housed in the HCU for three months after he returned from the hospital and was unable to access inmate help, a typewriter, and/or a grievance box while he was housed there.  By the time Plaintiff transferred out of the HCU and secured inmate help preparing grievances, the grievances were late.

Defendants have not met the burden of proving that an administrative remedy was available to Plaintiff and that he failed to pursue it.  *See Thomas*, 787 F.3d at 847; *Pavey*, 663 F.3d at 903.  Therefore, Count 1 will receive further review against Defendants Myers, Wheeler, and Grote, and Count 3 will proceed against Defendant Monti.

## DISPOSITION

The Motions for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Percy Myers, M.D. (Doc. 56), Barbara Wheeler (Doc. 59), Jonathan Grote, Daniel Monti, and Jeffrey Wehking (Doc. 61) are **DENIED**.  The Court will enter a separate Scheduling Order lifting the stay on merits discovery and providing further instructions and deadlines for litigation of Count 1 against Defendants Meyers, Wheeler, and Grote and Count 3 against Defendant Monti.

**IT IS SO ORDERED.**

**DATED:** February 24, 2026           *s/ Staci M. Yandle*
                                       **STACI M. YANDLE**
                                       **Chief U.S. District Judge**